UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In the matter of B.O. and P.S., parents and
natural guardians of their son, K.O., a student
with a disability,

                              Plaintiffs,

          -against-

COLD SPRING HARBOR CENTRAL
SCHOOL DISTRICT,

                              Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
10-cv-3086 (ADS)(ARL)

**APPEARANCES:**

**Law Offices of George Zelma and David Berlin, Esqs.**
*Attorneys for the plaintiffs*
888 Seventh Avenue
44th Floor
New York, NY 10106
       By:    George Peter Zelma, Esq., of Counsel

**Frazer & Feldman, LLP**
*Attorneys for the defendant*
1415 Kellum Place
Garden City, NY 11530-1604
       By:    Laura A. Ferrugiari, Esq., of Counsel

**SPATT, District Judge.**

In this appeal under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq.* ("IDEA"), the plaintiffs B.O. and P.S. seek reimbursement of tuition paid for their son, K.O. to attend a private school for the 2008–09 school year. For the reasons that follow, the Court denies the plaintiffs' appeal.

# I. BACKGROUND

The plaintiffs B.O. and P.S. are the parents of K.O., a child born on August 30, 1996. Since the second grade, K.O. has been classified as "Other Health Impaired" by his home school district, the defendant Cold Spring Harbor Central School District (the "School District"). Under the IDEA and New York law, that classification entitles K.O. to the benefits of additional public resources to accommodate his educational needs. This case involves a dispute over those additional benefits.

K.O.'s specific abilities and disabilities have been measured extensively through observations, interviews, and batteries of standardized tests —and unsurprisingly, there is disagreement among professionals as to the contours and seriousness of K.O.'s disabilities and needs. However, there is general consensus that the core of K.O.'s difficulties relate to language decoding and encoding. That is, K.O. struggles to translate written text into understandable language, and conversely, to translate thoughts and spoken words into standardized written text. K.O. also has some difficulty with mathematics, but performs substantially above average on assessments of vocabulary and linguistic comprehension. Emotionally and behaviorally, K.O. is medicated for Attention Deficit Hyperactivity Disorder and has been diagnosed at times as experiencing depression and anxiety. However, the record below shows that those who interact with K.O. generally describe his personality in glowing terms, and that K.O. has very seldom presented behavioral problems in school.

Based on K.O.'s classification, the School District prepared an Individualized Education Plan ("IEP") for K.O. prior to each school year, pursuant to the IDEA and New York's implementation of that law. In general, each of K.O.'s IEPs describes his

abilities and needs; sets forth what type of classroom he would be placed in for the following year; and also details any additional accommodations and support he was to receive. This case centers on the IEP prepared for K.O. for his seventh grade year.

On May 15, 2008, the School District finalized K.O.'s seventh grade IEP, which outlined K.O.'s accommodations for the 2008–09 school year. That IEP assigned K.O. to a "co-teach" classroom with both mainstream students—that is, students without diagnosed disabilities—and students with classified disabilities. The assigned classroom was to have two teachers, one of whom was to be solely responsible for aiding designated students with disabilities, including K.O. Also, K.O. was assigned a number of additional accommodations and resources, including daily small group and one-on-one instructional periods.

The present lawsuit arose because K.O.'s parents objected to K.O's 2008–09 IEP as insufficient under the IDEA, and instead elected to enroll K.O. at Eagle Hill School in Hardwick, Massachusetts for that year. Eagle Hill is a private school that exclusively serves students with language-related learning disabilities, and provided K.O. with substantially smaller classes that did not include mainstream students. On September 25, 2008, shortly following K.O.'s enrollment in Eagle Hill, K.O.'s parents filed a due process complaint with the School District, seeking reimbursement for K.O.'s 2008–09 Eagle Hill tuition. The school district declined to approve the reimbursement, and the parties proceeded to a hearing before an Impartial Hearing Officer ("IHO"). The hearing took place over the course of twenty-two days, spanning the period from December 9, 2008 to October 27, 2009, and was recorded on 4,391 pages of trial transcript.

On January 18, 2010, the IHO rendered a decision and order that determined that K.O.'s IEP for the seventh grade satisfied the relevant provisions of the IDEA. The IHO thus ruled in favor of the School District and denied the plaintiffs' request for reimbursement. K.O.'s parents then appealed to the New York State Department of Education, and on April 7, 2010, a State Review Officer ("SRO") affirmed the IHO's denial of reimbursement. On July 6, 2010, the plaintiffs commenced the present action to appeal from the SRO's decision of April 7, 2010. On February 24, 2011, the parties each made the present motions for summary judgment with regard to the plaintiffs' appeal. The plaintiffs assert that the State's decision below was both procedurally and substantively improper. The defendant contends that the State's decision was correct and should be affirmed.

## II. DISCUSSION

**A. Relevant Legal Standards**

Although the motions before the Court are made pursuant to Fed. R. Civ. P. 56, the Second Circuit has observed that a summary judgment motion in the IDEA context is more accurately described as "a 'pragmatic procedural mechanism' for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005) (quoting, respectively, Warton v. New Fairfield Board of Educ., 217 F. Supp. 2d 261, 270 (D. Conn. 2002)). In reviewing a State's decision under the IDEA, the Court considers the record below, but also may consider any additional evidence submitted by the parties. See 20 U.S.C. § 1415(i)(2)(C). The Court's decision is based

on a preponderance of the evidence, id., but the Court "must give 'due weight' to the administrative proceedings, 'mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" Grim v. Rhinebeck Central School Dist., 346 F.3d 377, 381 (2d Cir. 2003) (quoting Walczak v. Florida Union Free School District, 142 F.3d 119, 122 (2d Cir. 1998) and Board of Education v. Rowley, 458 U.S. 176, 208, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)). Thus, the Court's role in reviewing a state's educational decision is "strictly limit[ed]". Grim, 346 F.3d at 381.

When a State's decision under the IDEA is challenged in federal court, a court conducts a review of both the procedural and substantive adequacy of the underlying decision. The procedural review requires a court to consider, simply, whether "the State complied with the procedures set forth in the [IDEA]". Rowley, 458 U.S. at 206 (footnote omitted). These procedures include, among other things, (1) protections for parents' participation in planning for their child's education, and (2) rules for the State's review of a school's educational decisions. See Sections 1415(f)(3)(E); 1415(h).

As for the substantive review of a State's decision under the IDEA, a court's analysis focuses on whether "the individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 207. By way of background, the IDEA requires states such as New York that accept certain federal funding to "develop educational plans that are 'reasonably calculated' to ensure that all children with disabilities receive a 'free appropriate public education.'" D.F. ex rel. N.F. v. Ramapo Cent. School Dist., 430 F.3d 595, 598 (2d Cir. 2005) (quoting 20 U.S.C. § 1412(a)(1)). To meet this requirement, a

5

state need *not* "maximize the potential of handicapped children", Rowley, 458 U.S. at 206, or "secure the best education money can buy." Lunceford v. District of Columbia Bd. of Educ., 745 F.2d 1577, 1583 (D.C.Cir. 1984) (Ruth Bader Ginsburg, J.) (cited favorably in Walczak v. Florida Union Free School Dist., 142 F.3d 119, 130 (2d Cir. 1998)). Rather, the IDEA requires a state to develop a plan for a disabled student that is "likely to produce progress, not regression", and further, that is likely to produce more than "trivial advancement, such that the door of public education is opened for a disabled child in a meaningful way." Ramapo Cent. School Dist., 430 F.3d at 598 (internal quotations and citations omitted). In addition, the plan should aim to achieve these goals in the "least restrictive environment"—that is, in a setting that isolates the child from mainstream students as little as possible. 20 U.S.C. § 1412(a)(5)(A).

A state's primary tool in implementing the IDEA's requirements is the "individualized education plan", or "IEP", which the IDEA requires a school district to prepare for each student with a disability. A student's IEP must be developed with the input of his parents, and must set forth, among other things, the specific educational accommodations that will be provided to the child to meet the IDEA's substantive educational requirements. 20 U.S.C. § 1414(d). In New York, the primary author of a child's IEP is a school district's committee (or sub-committee) on special education ("CSE"), which generally includes the student's parents and teachers, as well as various administrative and support personnel from the child's school. See N.Y. Education Law § 4402.

Parents who object to their child's IEP as inadequate have several options, including the right to appeal the decision to an independent arbitrator. In addition, if a

child's IEP provides for a public school placement and a parent believes only a private school placement would satisfy the IDEA's educational guarantees, the parent may place the student in a private school and seek tuition reimbursement from the state. When a parent elects this course, a tribunal reviewing the request for reimbursement applies the two-prong analysis set forth by the United States Supreme Court in <u>Sch. Comm. of Burlington v. Dep't of Educ.</u>, 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985). Under that case, a tribunal should compel reimbursement only if "(1) [] the IEP proposed by the school district [was] inappropriate; [and] (2) [] the private placement [was] appropriate to the child's needs." <u>Frank G. v. Board of Educ. of Hyde Park</u>, 459 F.3d 356, 363 (2d Cir. 2006). Further, in deciding whether to grant reimbursement, a decision maker should also consider "equitable considerations relating to the reasonableness of the action taken by the parents." <u>Id.</u> (internal quotations and alterations omitted).

**B. As to Procedural Sufficiency**

Here, the plaintiffs challenge both the procedural and the substantive sufficiency of K.O.'s individualized education plan. The Court begins by addressing the plaintiffs' procedural challenges, which the Court understands to be two-fold. First, the plaintiffs assert that they as parents were not afforded "meaningful participation" in the preparation of K.O.'s IEP. (Pls.' Mem. L. in Supp. of Sum. J. at 13.) Second, the plaintiffs maintain that the Independent Hearing Officer who reviewed K.O.'s IEP gave inappropriate deference to the educators who drafted the plan. (Id. at 18.)

### 1. The Plaintiffs' "Meaningful Participation" in the Preparation of K.O.'s IEP

The plaintiffs' first procedural objection is that they were improperly excluded from meaningful participation in the drafting of K.O.'s 2008–09 IEP. In support of this objection, the plaintiffs correctly point out that the IDEA—as well as the federal regulations promulgated under it—require schools to "take steps to ensure that one or both of the parents of a child with a disability are present at each IEP Team meeting or are afforded the opportunity to participate [in the meeting] . . . ." 34 C.F.R. § 300.322; see also Section 1415(b) ("The procedures required by this section shall include . . . [a]n opportunity for the parents of a child with a disability . . . to participate in meetings with respect to the identification, evaluation, and educational placement of the child . . . ."). The plaintiffs maintain that, while they were present for the meeting at which K.O.'s IEP was finalized, their participation in that meeting was not meaningful, and their attendance therefore did not satisfy the IDEA's requirements.

Having reviewed the record and the additional evidence submitted by the plaintiffs, the Court finds no basis for this contention. K.O.'s IEP was prepared during a four and a half hour meeting of the School District's sub-committee on special education, conducted on May 15, 2008. Both of K.O.'s parents attended the entire meeting, as did their educational advocate. The record below shows that all three actively participated in the meeting, and submitted privately obtained evaluations of K.O. to the other members of the CSE. The plaintiffs themselves do not even argue that their voices were ignored at the meeting, but rather maintain only that their request that K.O. be placed outside of the School District was disregarded. However, even on that issue, K.O.'s father admitted

that he "could say what he wanted to say" at the May 15, 2008 meeting. (Hearing Tr. at 3608:19–20.) As for the plaintiffs' assertion that their suggestions about an out-of-district placement for K.O. "weren't taken seriously" during the CSE meeting, the Court finds no evidence to corroborate this contention. (Id. at 3608:22–23.)

Along similar lines, the plaintiffs point to a meeting of teachers and administrators held on May 13, 2008 regarding K.O.'s IEP, and assert that the decision to keep K.O. in the School District was improperly finalized at that meeting, in the plaintiffs' absence. The Court also finds this assertion to be unsupported. While it is undisputed that members of the CSE met on May 13, 2008 without the presence of K.O.'s parents, the Court finds no compelling evidence that School District personnel made any final decision about K.O.'s IEP at that meeting. Further, the Second Circuit has held that the IDEA regulations expressly permit "school districts to engage in 'preparatory activities . . . to develop a proposal or response to a parent proposal that will be discussed at a later meeting' without affording the parents an opportunity to participate." T.P. ex rel S.P. v. Mamaroneck Union Free School Dist., 554 F.3d 247, 253 (2d Cir. 2009) (quoting 34 C.F.R. §§ 300.501(b)(1) & (b)(3)) (alterations in original). Here, the Court finds no evidence that the May 13, 2008 meeting contravened this rule.

In light of the evidence before the Court, the Court finds that the plaintiffs were afforded a meaningful opportunity to participate in the preparation of K.O.'s IEP. Thus, there is no basis for finding K.O.'s IEP to be procedurally deficient on those grounds.

**2. The Independent Hearing Officer's Deference to the School District**

In their second procedural challenge, the plaintiffs assert that the Independent Hearing Officer inappropriately deferred to the School District's decisions regarding

K.O.'s educational accommodations. Specifically, the plaintiffs object to the portion of the IHO's decision in which he states that, "[a]fter reviewing the evidence in this case, I must heed the warning of the court in Rowley and refrain from substituting my judgment for that of the educational professionals on the CSE." (IHO Decision at 55.) The plaintiffs contend that this misstates the applicable law, as Rowley provided that *federal courts* must defer to state proceedings, but expressed no opinion about state hearing officers deferring to local school districts. To the contrary, the IDEA provides that "a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education," Section 1415(f)(3)(E)(i), implying that no deference is due to a school district's determinations.

The Court agrees that this particular statement by the IHO is somewhat troublesome. To be sure, the plaintiffs provide no cases—and the Court is aware of no cases—that expressly prohibit an IHO from deferring to the expertise of the members of the CSE. Nevertheless, the Court reads Section 1415(f)(3)(E)(i) to require an IHO to render a decision based on his or her own judgment in light of the evidence taken at a hearing. The IHO's statement that he cannot "substitute[e his] judgment" for the judgment of the "educational professionals on the CSE" is, at least on its face, in tension with this statutory requirement.

However, the Court finds that this statement in the IHO's decision is ultimately not material to the outcome of this case. Whatever the meaning of his statement, the IHO's decision does in fact provide a full and impartial analysis of whether K.O.'s IEP was sufficient. In addition to a detailed recitation of the evidence taken at the hearing, the IHO provided several pages of discussion explaining why the evidence supported the

School District's position. In that discussion, the IHO also set forth the witnesses he found credible and the testimony he credited—and indicated no bias in favor of or against the School District. It is therefore possible that the IHO's statement was intended to merely communicate that he found the School District's expert testimony compelling. However, even if the IHO's statement is read to inaccurately identify his role, the Court finds that the actual analysis conducted by the IHO was thorough, fair, and appropriate.

In addition, the Court finds that any inappropriate deference to the CSE was remedied by the State Review Officer's appellate review of the IHO's decision. The SRO indicated that he conducted a "thorough and independent review of the hearing record," and that this "support[ed] the impartial hearing officer's decision in this case." (SRO Decision at 18.) The SRO then proceeded to provide his own analysis of the testimony taken at the hearing, with voluminous references to the hearing transcript. The Court therefore finds that, to the extent that the IHO may have improperly deferred to the CSE, the SRO's independent and expressly non-deferential review of the record cured any such defect.

Finally, the Court notes that the plaintiffs assert in a similar vein that the IHO's determinations of witnesses' credibility were not supported by the hearing record, and that they were therefore "arbitrary and capricious." (Pls.' Mem. of L. in Supp. of Summ. J. at 19.) In the Court's view, this assertion is distinct from the plaintiffs' general challenge to the standard of review applied by the IHO in rendering his decision. The Court therefore addresses the issue of credibility in its following discussion of the substance of the SRO's decision.

**C. As to Substantive Sufficiency**

The plaintiffs also challenge K.O.'s 2008–09 IEP as substantively insufficient, and maintain that they are entitled to tuition reimbursement because K.O.'s placement in a private school was, by contrast, appropriate. Ultimately, because the Court finds that K.O.'s 2008–09 IEP satisfied the IDEA's requirements, the Court denies the plaintiffs' request for reimbursement without analyzing the appropriateness of K.O.'s private school placement. See Frank G., 459 F.3d at 363 (setting forth the steps a court must take in analyzing a tuition reimbursement request under the IDEA).

As previously noted, the Court analyzes the sufficiency of an IEP based on the record below, as well as on the additional evidence submitted to the Court. Here, the record below comprises more than four thousand pages of transcript from the hearing, as well as dozens of exhibits. Both the IHO and the SRO summarized this evidence in substantial detail in their decisions, and the Court finds these summaries to be thorough and accurate. Thus, the Court will not repeat those efforts. Rather, the Court very briefly outlines the evidence adduced at the hearing, and also provides a synopsis of the accommodations recommended in K.O.'s IEP. Ultimately, the Court concludes that, granting appropriate deference to the decisions below, K.O.'s 2008–09 IEP was sufficient under the IDEA.

In general terms, the hearing testimony revealed a divide in opinion between, on the one hand, teachers and education professionals at the School District, and, on the other hand, a teacher and education professionals associated with K.O.'s private school. In short, K.O.'s public school teachers, the School District's psychologist, and the heads of the school's committee on special education believed that K.O. had made progress

during his sixth grade year, and that a moderately increased level of intervention was appropriate for him during his seventh grade year. By contrast, two psychologists who had examined K.O. in 2007 and 2008, respectively, as well as a teacher at K.O.'s private school, testified that they believed that K.O. needed instruction in small classrooms that focused intensely on reading and writing. K.O.'s parents testified that they also believed that a private school placement was necessary for K.O.

Consistent with this divide, the School District's witnesses asserted that K.O. should have spent seventh grade in a "co-teach" classroom, which contained both special education and mainstream students. There are two teachers in a co-teach classroom, one of whom is dedicated to assisting only the special education students. By contrast, the plaintiffs' witnesses asserted that this was insufficient, and that it was necessary to place K.O. in a small, private school such as Eagle Hill. In Eagle Hill there was provided a "self-contained" classroom—meaning that only special education students were in the classroom—as well as a strong focus on reading and writing.

Along with highlighting this diversity of opinion, the hearing testimony also revealed the largely un-controverted details of the accommodations (1) provided to K.O. during his sixth grade year, (2) recommended in his IEP for his seventh grade year in public school, and (3) that K.O. actually received during his seventh grade year at Eagle Hill School. The Court summarizes this additional information below:

|  | **Sixth Grade *Actual* Accommodations** | **Seventh Grade *Recommended* Accommodations** | **Seventh Grade *Actual* Accommodations** |
|---|---|---|---|
| **School and classroom makeup** | Public school; Classroom is fully integrated with mainstream students | Public School; "Co-teach" classroom with 24 students, both mainstream and special education; two teachers in the classroom, one of whom is certified in special education and exclusively assists students with disabilities, including K.O. (number of students in classroom with disabilities is unclear) | Private school focused on language difficulties; Student resides at school from Monday to Friday; All students in classroom have learning disabilities; classroom has between 6 and 11 students |
| **Pull-out accommodations (generally take place during class periods that are approximately 40 minutes long)** | Once a day math instruction, 3:1 student to teacher ratio | Once a day "guided study" instruction, 5:1 student to teacher ratio | |
| | Once a day reading and writing instruction, 2:1 student to teacher ratio | Once a day reading instruction, 1:1 student to teacher ratio | Twice a day reading instruction, 4:1 student to teacher ratio |
| | Once a week occupational therapy to improve handwriting and typing, 1:1 student to teacher ratio | Twice a week occupational therapy to improve handwriting and typing, 1:1 student to teacher ratio | |
| | | Twice a week speech-language therapy, 3:1 student to teacher ratio | Once a week speech and language therapy |
| | | Once a week counseling, 1:1 student to counselor ratio | |
| **Other in-classroom accommodations** | Seated close to the teacher; additional positive reinforcement from teacher; repetition of directions by teacher; modified homework; testing accommodations, including additional time and oral explanation of directions | Seated close to the teacher; additional positive reinforcement from teacher; repetition of directions by teacher; modified homework; testing accommodations, including additional time; access to word processor; use of books on tape | |

Although the Court provides here only a brief summary of the IHO hearing, the Court has reviewed the relevant evidence in the record, as well as the additional submissions provided by K.O.'s parents. On the basis of this evidence, the Court agrees

14

with the IHO and SRO that the recommendations made for K.O. for the seventh grade satisfy the IDEA's requirements.

There is little doubt that the plaintiffs' placement of K.O. at Eagle Hill for his seventh grade year represented a more substantial intervention than proposed in K.O.'s 2008–09 IEP. As such, K.O. may well have received benefits from his year at Eagle Hill that he would not have received in the public school. However, under the IDEA, the School District need not provide the best possible education for K.O., but need only provide an educational plan that is calculated to produce non-trivial advancement. See, e.g., Ramapo Cent. School Dist., 430 F.3d at 598. Thus, the ultimate determination that the Court must make is not whether Eagle Hill was a better option than the co-teach classroom proposed by the School District, but instead, whether the accommodations proposed for K.O. in his 2008–09 IEP satisfied the IDEA. The Court finds that they did satisfy the statutory requirements.

First, *all* of the education professionals who observed K.O. in a public school classroom agreed that the public school placement for K.O. recommended in his IEP was appropriate for his seventh grade year. This included a number of professionals who had known K.O. for much of his educational career. In support of this conclusion, many of these witnesses pointed to K.O.'s undisputed personal and academic strengths, which include strong oral comprehension and a likeable personality. While K.O. also faces a number of significant and undisputed challenges, the Court agrees that K.O.'s academic and emotional profile provides "hardly the portrait of a child on the brink." (IHO Decision at 56.) At the same time, in recognition of his needs, K.O.'s seventh grade IEP reflected a substantial increase in support over what he received in the sixth grade. While

he had previously been primarily in mainstream-only classrooms, K.O. would now be in a classroom with a dedicated special education teacher who assisted only the students in the class with disabilities. In addition, K.O. would receive daily one-on-one reading instruction, as well as daily small-group guided study sessions. Also, consistent with the IDEA's preference for inclusion of disabled students, the IEP provided that K.O. would be in a classroom that included mainstream students.

Second, while the plaintiffs provided reliable evidence that K.O. might have benefited from a private school placement, none of the expert witnesses that the plaintiffs relied on had observed K.O. in a public school classroom. Nor did any have substantial familiarity with the teaching model proposed in K.O.'s IEP. Thus, while all of the plaintiffs' expert witnesses recommended that K.O. be placed in a smaller classroom that focused more intensely on reading and writing, neither could speak with authority on whether the accommodations in K.O.'s 2008–09 IEP would nevertheless provide for non-trivial advancement. As such, the plaintiffs provided evidence that Eagle Hill was beneficial, but little evidence that spoke to the present question before the Court: namely, whether the placement recommended unanimously by K.O.'s public school teachers was sufficient under the IDEA. To be sure, the School District's employees' unanimous recommendation should not be seen as entirely unbiased, but neither should the recommendation of the plaintiffs' expert witnesses, all of whom were affiliated with Eagle Hill—though some were not directly employed by Eagle Hill. Thus, the plaintiffs have done little to tip the scales to show that K.O.'s IEP was insufficient.

Finally, there is compelling evidence that the non-language related challenges that K.O. faced—including difficulty with math, social interaction with peers, and emotional

stability—would be sufficiently met by K.O.'s 2008–09 IEP. First, virtually all of the teachers who knew K.O. viewed his social challenges at school as only moderate. Aside from the plaintiffs' own testimony—which is not based on classroom observation—the plaintiffs provide little evidence to contradict this assertion. Moreover, K.O.'s IEP provided that he was to receive weekly individual counseling; additional small-group support; and to be in a classroom with a substantial number of students with similar disabilities. In the Court's view, the School District's plan thus addressed these additional issues more than sufficiently to provide for K.O.'s non-trivial educational advancement.

Nevertheless, the plaintiffs also raise a number of specific objections to the decisions of the SRO and the IHO. The Court will now address these objections.

The plaintiffs' first objection concerns recordings of approximately eight telephone calls between K.O.'s mother and (1) Bruce Gottleib, the then-director of special education at K.O.'s public school, (2) Linda Gerver, K.O.'s sixth grade homeroom teacher, and (3) Bonnie Dawkins, K.O.'s sixth grade language arts teacher. The plaintiffs recorded the telephone calls between November 2007 and March 2008, without the knowledge of the School District employees. At the hearing, the IHO admitted all of these recordings and their related transcripts in evidence, but ultimately found that they were "of no probative value since the tapes were made before the co-teach program was developed." (IHO Decision at 57.) The plaintiffs contend that the IHO should not have discounted the recordings, which they assert contain admissions by K.O.'s teachers and the school special education director that public school placement was inappropriate for K.O.

The Court has reviewed the recordings, and agrees that their probative value is limited. As the IHO pointed out, the recordings pre-date K.O.'s 2008–09 IEP—some by several months. In addition, K.O.'s teachers make numerous positive comments during the telephone calls about K.O.'s abilities. Also, in none of the recordings do any professionals indicate definitively that only a private school placement would satisfy the legal requirements for K.O.'s education. Moreover, of significance in the Court's view, the Court's impression of the recordings is that the professionals whom the plaintiffs recorded cared deeply about K.O.'s wellbeing, and that they were attempting to work with the plaintiffs to serve K.O.'s best interests. To the extent that there is tension between comments that are made in these telephone calls and the ultimate recommendation for K.O., the Court finds no basis for viewing this variation as anything other than the evolving opinions of committed educators. As such, the Court finds this objection to be without merit.

Second, the plaintiffs point specifically to three letters that Bruce Gottleib, the then-chairman of the CSE, sent to other schools to investigate out-of-district placements for K.O. The plaintiffs contend that these also show that the School District believed that K.O. should have received a higher level of intervention than his IEP ultimately provided.

Again, having reviewed the relevant evidence, the Court does not find that these letters substantially undermine the School District's final recommendation in K.O.'s IEP. The letters—which were sent by only one member of the CSE—are investigatory, and do not reflect a final determination that an out-of-district placement for K.O. would be necessary to comply with the IDEA. Moreover, one school in Oyster Bay, New York responded to Gottleib's inquiry with the following missive, dated March 13, 2008:

> Thank you for the opportunity to visit West Side School on Wednesday to observe [K.O.]. The Resource Room class provided us with the perfect opportunity to see [K.O.] at work.
>
> [K.O.] appears to be a bright young man with a charming personality. [K.O.] did appear to be much higher functioning than our self[-]contained students. The verbal and academic abilities he displayed would not make him appropriate for our placement. [K.O.] impressed me as a student that would benefit from being in an inclusion program where his social skills would continue to develop.

(Hearing Ex. D-5; see also IHO Decision at 56 ("This letter is significant because it provides corroboration of the District's position by a disinterested observer, who had no axe to grind.").) The Court thus finds this objection with regard to the Gottleib letters to be without basis.

Finally, the plaintiffs maintain that the hearing record does not support the IHO's decision to credit the testimony of the School District's witnesses. The Court strongly disagrees. The Court reviews the IHO's determinations of credibility with deference. See, e.g., J.R. v. Bd. of Educ. of Rye County Sch. Dist., 345 F. Supp. 2d 386, 399 (S.D.N.Y. 2004) ("On this second level of review of the IHO's decision, we accord the deference, traditional on appellate review, to [the IHO's] assessment of the credibility of those witnesses who testified before him."). Given this level of review and the record as a whole, the Court finds that the IHO's determinations of credibility should be affirmed.

As a general matter, a parent's desire to secure the best possible education for his or her child is not only understandable, but laudable. Nevertheless, while the IDEA guarantees much to children with disabilities, it does not guarantee the best possible education. It guarantees an appropriate education. In light of the considerations discussed above and the record as a whole, and giving proper deference to the decisions

below, it is the Court's view that K.O.'s 2008–09 IEP provided for an appropriate education. The plaintiffs' motion for summary judgment is therefore denied, and the defendant's motion for summary judgment dismissing the complaint is granted.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiffs' motion for summary judgment in this case is denied; and it is further

**ORDERED** that the defendant's motion for summary judgment in this case is granted, and the plaintiffs' request for tuition reimbursement is denied and the complaint dismissed; and it is further

**ORDERED** that the Clerk of the Court is respectfully directed to mark this case closed.

**SO ORDERED.**

Dated: Central Islip, New York
September 1, 2011

                                                                    */s/ Arthur D. Spatt*
                                                                       ARTHUR D. SPATT
                                                     United States District Judge